**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3555-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HAKEEM A. CHATMON,

    Defendant-Appellant.

_____

Argued May 21, 2026 – Decided July 29, 2026

Before Judges Mawla and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-02-0096.

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Peter T. Blum, of counsel and on the briefs).

Milton S. Leibowitz, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County Prosecutor, attorney; Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following an unsuccessful motion to suppress evidence seized without a warrant, defendant Hakeem A. Chatmon entered a negotiated guilty plea to second-degree unlawful possession of a weapon – assault firearm, N.J.S.A. 2C:39-5(f), and was sentenced in accordance with the plea agreement to a five-year prison term with a forty-two-month parole ineligibility term. He now appeals from a January 20, 2023 order denying his suppression motion. We affirm.

I.

The following facts are taken from the testimony during the suppression motion. Led by Detective Sergeant Michael Savnik, the New Jersey State Police Fugitive Unit, in conjunction with the United States Marshals Regional Fugitive Task Force, planned to execute an arrest warrant for defendant, who was wanted for possession of ghost guns and parts.

Officers learned defendant may have been staying at the home of his children's mother, co-defendant Ta'Ana Dupree. On the morning of February 4, 2021, approximately ten officers gathered at her residence. While some officers established a perimeter around the multi-family structure, Detective Sergeant Savnik and other officers went to the exterior door of the building. They announced "police" and told the first-floor residents they had a warrant. The

residents allowed the officers into the building and confirmed defendant was present in Dupree's apartment.

The officers then knocked on Dupree's second-floor apartment door and again announced "police." Given the nature of the pending charges against defendant, the officers' weapons were drawn. Although Detective Sergeant Savnik could not recall whether defendant or Dupree opened the door, he testified defendant was immediately arrested in the living room area and was then brought out of the apartment into the hallway of the building.

Defendant, clad only in his underwear, told officers he needed to use the bathroom. After officers conducted a protective sweep of the apartment, which did not reveal any weapons, Detective Sergeant Savnik reentered the apartment with defendant and allowed him to use the bathroom and get dressed in the bedroom. He then escorted defendant to a troop car for transport.

State Police Detective Michael Schaible also assisted in the operation. While Detective Sergeant Savnik and the other officers entered the building, Detective Schaible remained on the street until defendant was handcuffed and secured. When Detective Schaible entered the apartment, he saw Dupree and two children in the living room with police officers. He then entered the

A-3555-23

bedroom and read defendant his Miranda[1] rights, after which defendant declined to give a statement.

Detective Schaible then observed a gun lock on top of the bedroom dresser. He described the lock as one that goes through the barrel of a gun and is only used for that purpose. While possessing a gun lock is not illegal, given the lock, the nature of defendant's pending charges, and the fact defendant had no weapons legally registered to him, Detective Schaible decided to seek Dupree's consent to search the apartment.

Detective Schaible testified he exited the bedroom and approached Dupree, who was calm. Pursuant to State Police practice, he advised Dupree of her Miranda rights although she was not under arrest. Dupree confirmed she was the sole lessee of the apartment and waived her Miranda rights. After Schaible read her verbatim the consent to search form, Dupree signed it.

Dupree then advised Detective Schaible "there might be . . . some weapons in the bedroom." Officers located two bags under the bed, one containing three assault rifles and the other containing an extended magazine and ammunition. They also found a black box containing a handgun, a high-capacity magazine, and ammunition in the nightstand.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-3555-23

Contrary to Detective Schaible's account, Dupree testified she was crying, scared, and worried, and did not know what police were looking for when they conducted the protective sweep of the apartment. She claimed Detective Schaible approached her in the hallway with a black box she kept under her bed and asked her to sign a blank consent to search form. Dupree testified she was unable to read the form because she did not have her glasses, and Detective Schaible refused to let her get them. She denied having been Mirandized or read the form but stated she signed the form because Detective Schaible told her she would go to jail if she did not do so. Dupree also testified she signed the consent form because she knew officers had already searched the bedroom and found the guns. Upon the judge's questioning, Dupree claimed the duffle bags belonged to defendant but the contents, along with the black box, belonged to her.

The motion judge found both detectives were credible witnesses. She noted Detective Sergeant Savnik was "firm, clear, and consistent," and "had a good recollection of the events." Detective Schaible's "testimony was clear, direct, and largely consistent." He also had a good recollection of the events and when he could not recall a detail, asked to review his report.

In contrast, Dupree, "[w]hile initially responsive and consistent, . . . answered questions with a question, or was not responsive, to a number of the

A-3555-23

questions asked." The judge also noticed Dupree took sips of water during her testimony, giving "the clear impression . . . [she] was doing so to give herself additional time before answering." Citing numerous examples of Dupree's contradictory and inconsistent testimony, the judge concluded she was not credible.

Defendant's motion to suppress alleged the State failed to demonstrate Dupree's consent to search the apartment was voluntary. He contended Detective Schaible's threat to arrest Dupree coerced her into signing the consent form after officers had already seized the evidence. Defendant also argued officers lacked cause to conduct a protective sweep because only Dupree and the children were in the apartment.

Given her credibility findings, the judge found the totality of circumstances demonstrated Dupree's consent was voluntary under State v. King, 44 N.J. 346, 352-53 (1965). She further determined the protective sweep of the apartment was reasonable given the nature of the charges against defendant and the fact the arrest occurred at a third-party residence. Thus, the judge denied defendant's motion to suppress.

Defendant now raises the following points for our consideration:

A-3555-23

POINT I

THE ITEMS FOUND IN THE APARTMENT SHOULD BE SUPPRESSED BECAUSE THE POLICE ENTERED ILLEGALLY WITHOUT A SEARCH WARRANT. U.S. CONST. AMENDS. IV, XIV; N.J. CONST. ART. 1, ¶ 7.

POINT II

ALTERNATIVELY, THE ITEMS FOUND IN THE APARTMENT SHOULD BE SUPPRESSED WHEN THE POLICE ILLEGALLY REMAINED INSIDE AFTER THEY WERE FINISHED EXECUTING THE ARREST WARRANT. U.S. CONST. AMENDS. IV, XIV; N.J. CONST. ART. 1, ¶ 7.

II.

We defer to a trial court's factual findings in a suppression hearing "when those findings are supported by sufficient credible evidence in the record." State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)) (internal quotation marks omitted). The trial judge has the "'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "We ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412,

7

425 (2014)).  However, no deference is owed to the trial court's application of the law to the facts, which is reviewed de novo.  State v. Fenimore, 261 N.J. 364, 373 (2025).

"Warrantless searches are presumptively unreasonable under both [the federal and state] constitutions," State v. Cohen, 254 N.J. 308, 319 (2023), and "the clear preference is that police officers secure a judicial warrant before executing a search," State v. Gonzales, 227 N.J. 77, 90 (2016).  "[T]o overcome that presumption[,] . . . the State must show by a preponderance of evidence that the search falls within one of the well-recognized exceptions to the warrant requirement." State v. Smart, 253 N.J. 156, 165 (2023).  Consent to search is a well-recognized exception.  State v. Cushing, 226 N.J. 187, 199 (2016) (citing Schneckloth v. Bustamante, 412 U.S. 218, 219 (1973); State v. Domicz, 188 N.J. 285, 305 (2006)).

Defendant does not contest the judge's determination the officers' protective sweep of the apartment was justified and Dupree's consent to search was lawfully obtained.  Instead, he raises new arguments for the first time on appeal.[2]  We ordinarily decline to consider an issue not properly presented to

---

[2]  Although defendant contends he raised the issues in Point II during the suppression hearing, they were not included in his motion to suppress and were only briefly mentioned during defense counsel's closing argument.

the trial court unless the jurisdiction of the court is implicated or the matter concerns an issue of great public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); see also State v. Witt, 223 N.J. 409, 418-19 (2015). Neither exception is present in this matter.

Even if we were to consider these belated points of error, we are unconvinced the officers' entry into the apartment was improper. Although Detective Sergeant Savnik could not recall who answered the door to the officers' knock and announce, he "remember[ed] the door opening." He testified the officers "were allowed in," and defendant was arrested "at that point within the living room right there." There is no indication the officers conducted an impermissible search of Dupree's apartment because either defendant answered the door and was arrested, or Dupree answered the door, with defendant in plain view, and she consented to the officers' entry. Thus, the record belies defendant's contention.

Alternatively, defendant argues the officers illegally remained in the apartment after he was removed. This contention is likewise unsupported by the testimonial record. When Detective Schaible entered the bedroom to administer Miranda warnings to defendant, he observed the gun lock on the dresser and decided to seek Dupree's consent to search the apartment. As the motion judge

determined, there is no question Detective "Schaible was lawfully in [the] bedroom [when] he observed the gun lock on the bureau, in plain view, a recognized exception to the warrant requirement. State v. Bruzzese, 94 N.J. 210, 236 (1983)." Detective Schaible testified defendant was removed from the apartment after Dupree consented to the search, and therefore, the record does not support the claim Schaible "lingered" after defendant was removed. This allegation would nevertheless not alter the analysis because Schaible had already observed the gun lock in plain view.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division